UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

_____

GLORIA STURZENACKER, :
:
            Plaintiff, :
:
            v. : No. 5:17-CV-00113-JFL
:
CMC RESTORATION, INC.; :
CHRISTOPHER & BRUMMETT, INC; :
DAVID KELLEY, :
:
            Defendants. :
_____

**O P I N I O N**
**Defendants' Motion to Dismiss, ECF No. 4 – Granted in Part and Denied in Part**

**Joseph F. Leeson, Jr.**                                                           **June 27, 2017**
**United States District Judge**

       In January 2017, Plaintiff Gloria Sturzenacker initiated this action under the Federal Fair Debt Collection Practices Act ("FDCPA"), Pennsylvania's Fair Credit Extension Uniformity Act ("FCEUA"), Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), Pennsylvania's Home Improvement Consumer Protection Act ("HICPA"), and various other state tort claims. The Complaint names as Defendants: CMC Restoration, Inc. ("CMC"), Christopher & Brummett, Inc. ("C&B"), and David Kelley, president of CMC. Defendants CMC and Kelley have filed a Motion to Dismiss the claims against them. For the following reasons, Defendants' Motion is granted in part and denied in part.

**I.    BACKGROUND[1]**

       On June 30, 2015, Sturzenacker's home in Northampton County "sustained three broken storm windows." Compl. ¶¶ 10, 17, ECF No. 1. Sturzenacker was subsequently convinced by a

---

[1]      Sturzenacker's Complaint alleges the following facts.

1

CMC employee that her aluminum siding and porch roof were also damaged. Compl. ¶ 18. She filed a claim with her insurance company and entered into a contract with CMC to repair the storm damages to the home. Compl. ¶¶ 19-20. Sturzenacker claims she was told that she was signing a "scope document" and not a contract with CMC. Compl. ¶ 20. Shortly thereafter, CMC began its work on Sturzenacker's home, but "failed to perform proper repairs." Compl. ¶ 21.

Sturzenacker alleges that CMC failed to replace a storm door, removed the front porch soffit without permission, and replaced siding and shutters with lower quality materials. Compl. ¶¶ 21-24. Due to this improper and unfinished work, Sturzenacker refused to pay the insurance proceeds to CMC. Compl. ¶ 25. On January 13, 2016, following Sturzenacker's refusal to pay, Kelley filed an improper mechanics lien on Sturzenacker's property. Compl. ¶ 27.[2] CMC also hired C&B, a collection agency, to collect on the alleged debt Sturzenacker owed CMC. Compl. ¶ 28. C&B called not only Sturzenacker, but also her brother and a friend of her brother. *Id*. The three also began receiving calls from an "Apex Investigations," claiming that Apex would be assessing the value of Sturzenacker's home in order to prepare for foreclosure proceedings. Compl. ¶ 29. In addition to these calls, Sturzenacker received calls from a man claiming to be both "James Peterson" of Apex and later "Thomas McKewen," the Legal Administrator of C&B; these calls continued even after Sturzenacker informed those calling that she was represented by counsel. Compl. ¶¶ 30-31. Plaintiff has brought claims of unfair debt collection (under both federal and state law), unfair business practices, fraud, and breach of contract.

---

[2] The parties agree that Kelley wrote in his name and address in the space in which the perspective lien holder should have written in the owner of the subject property and the address of said property. Defs.' Mot. Dismiss ¶ 20, ECF No. 4.

## II. STANDARD OF REVIEW

### A. Motion to Dismiss for Failure to State a Claim

In rendering a decision on a motion to dismiss, this Court must "accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (internal quotation marks omitted). Only if "the '[f]actual allegations . . . raise a right to relief above the speculative level'" has the plaintiff stated a plausible claim. *Id.* at 234 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 540, 555 (2007)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense"). The defendant bears the burden of demonstrating that a plaintiff has failed to state a claim upon which relief can be granted. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

### B. Motion to Dismiss for Lack of Jurisdiction – Supplemental Jurisdiction

For cases in which a district court has original jurisdiction, it shall also "have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). Claims are part of the same case or controversy if they "derive from a common nucleus of operative fact." *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725 (1966). However, even if the claims make up one "case or controversy," the decision to exercise jurisdiction remains open to the court. *Gibbs,* 383 U.S. at 726. In making its decision of

whether to exercise supplemental jurisdiction a court should consider "judicial economy, convenience and fairness to litigants." *Id*. (holding that "if these [factors] are not present a federal court should hesitate to exercise jurisdiction over state claims, even though bound to apply state law to them").

## III. ANALYSIS

### A. Sturzenacker's FCEUA claim against CMC and Kelley is dismissed without prejudice.

CMC and Kelley contend that Sturzenacker has failed to state a claim of relief under the FCEUA, and thus Count II of the Complaint should be dismissed against them. The FCEUA "establishes what shall be considered unfair methods of competition and unfair or deceptive acts or practices with regard to the collection of debts." 73 P.S. § 2270.2.

#### 1. CMC and Kelley are creditors.

Sturzenacker's Complaint asserts that CMC and Kelley are "creditors" as defined by the FCEUA. Compl. ¶¶ 39-40. Under the FCEUA a "creditor" is any "person, including agents, servants or employees conducting business under the name of a creditor . . ., to whom a debt is owed or alleged to be owed." 73 P.S. § 2270.3 (2000). There is no dispute that CMC is a "creditor" under the Act. However it is disputed whether Kelley meets the definition of "creditor."

Sturzenacker contends that Kelley meets the definition of "creditor" as he is an "agent[], servant[] or employee[]" of a creditor (here CMC). Compl. ¶ 40. CMC and Kelley dispute the classification of Kelley as a creditor. However, Sturzenacker's Complaint states that Kelley is believed to be the owner or co-owner of CMC. See Compl. ¶ 16. Because this Court must "construe the complaint in the light most favorable to the plaintiff," this Court finds that Kelley

4

meets the definition of a "creditor" under the clear language of the FCEUA, as his role as partial owner of the company makes him an "agent[], servant [] or employee[]."[3]

### 2. Sturzenacker has not adequately demonstrated a violation of the FCEUA.

Although both CMC and Kelley fit the statutory definition of a "creditor" under the FCEUA, Sturzenacker must still assert adequate facts which, if true, would demonstrate a valid claim for relief. The FCEUA characterizes numerous actions of a creditor as "false, deceptive or misleading" and "unfair or unconscionable." 73 P.S. §§ 2270.4(5)-(6). While a list of actions is provided in the statute, it also states that the list is not exclusive. *Id*. Accordingly, although not listed specifically by the statute, Kelley's filing of a fraudulent or invalid mechanic's lien could be an act that is "false, deceptive or misleading" or "unfair or unconscionable."[4]

When determining whether a mechanics lien could be considered an "unfair or unconscionable" act, a state court in Texas ruled that attempting to foreclose on an invalid lien is unconscionable. *Compton and Adams Warehouse, Inc. v. Powers*, No. 04-04-00099-CV, 2004 WL 2346293 (Tex. App. 2004).[5] Similarly, the Sixth Circuit Court of Appeals has stated that "[m]aintaining an invalid lien against a debtor's home falls comfortably within the kinds of practices . . . identified as unfair." *Currier v. First Resolution Inv. Corp.*, 762 F.3d 529, 535 (6th Cir. 2014). Here, Sturzenacker does not assert any "facts suggestive of conduct" that would demonstrate CMC or Kelley attempted to foreclose or even maintain the lien on Sturzenacker's home. The lone statement that the filing of an improperly completed mechanic's lien violates the

---

[3] Kelley, who is actually the president of the company, still qualifies as an "employee" for purposes of the FCEUA. *See* Defs.' Mot. to Dismiss ¶ 5.
[4] *See* note 2, supra.
[5] The Texas statute mirrors the FCEUA in that it provides a non-exclusive list of acts which are determined to be "false, misleading, or deceptive acts or practices." *See* TEX. BUS. & COMM. CODE ANN. § 17.46(b).

FCEUA is not enough to sustain a claim under this Act. Accordingly, Sturzenacker's FCEUA claim against Kelley is dismissed without prejudice.

Additionally, Sturzenacker posits that the phone calls and other allegedly harassing behaviors demonstrate a violation of the FCEUA by CMC. Compl. ¶ 42(a)-(h). Due to Sturzenacker's attribution of these activities to agents of Defendant C&B in the "Factual Allegations" section of her Complaint,[6] it appears that Sturzenacker is attempting to argue that CMC be held liable for the actions of its hired debt collector, C&B. However, it has been established that in this jurisdiction, "there is no [vicarious] liability as between creditors and debt-collectors." *In re Howe*, 446 B.R. 153, 158 (E.D. Pa. 2009). Therefore, Sturzenacker has failed to allege any actions taken by CMC that would be a violation of FCEUA. Accordingly, Sturzenacker's FCEUA claim against CMC is also dismissed without prejudice.

Sturzenacker is granted leave to amend these claims. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 111 (3d Cir. 2002) (holding that in the absence of undue delay, bad faith, dilatory motive, unfair prejudice, or futility of amendment, a court should grant a plaintiff leave to amend a deficient complaint after a defendant moves to dismiss it).

**B.     Sturzenacker's UTPCPL claim against CMC is dismissed without prejudice.**

CMC contends that Sturzenacker has failed to state a claim of relief under the UTPCPL, and thus Count IV of the Complaint should be dismissed against it. The UTPCPL makes unlawful "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce" so listed in 73 P.S. § 201-2(4)(i)-(xxi). *See* 73 P.S. § 201-3 (2007). Pennsylvania state courts have stated, "[t]he UTPCPL is to be liberally construed to effectuate its objective of protecting the consumers . . . from fraud and unfair or deceptive business practices."

---

[6]     Compl. ¶¶ 28-32.

*Ash v. Continental Ins. Co.*, 932 A.2d 877, 881 (Pa. 2007). To establish a viable claim under the UTPCPL, a plaintiff must demonstrate "(1) a deceptive act that is likely to deceive a consumer acting reasonably under similar circumstances; (2) justifiable reliance; and (3) that the plaintiff's justifiable reliance caused ascertainable loss." *Hall v. Equifax Information Services LLC*, 204 F. Supp. 807, 810 (E.D. Pa. 2016) (citing *Slapikas v. First American Title Ins. Co.*, 298 F.R.D. 285, 292 (W.D. Pa. 2014)).

Here, Sturzenacker has satisfied the first element necessary to state a claim under the UTPCPL by alleging that CMC engaged in numerous acts that, if proven to have occurred, would demonstrate "a deceptive act that is likely to deceive a consumer."[7] Additionally, Sturzenacker has demonstrated that the alleged acts of CMC did create an actual loss. Sturzenacker asserts that she suffered out-of-pocket expenses and that the damage she incurred resulted in a decrease in the value of her home. Compl. ¶¶ 41, 68. Yet, Sturzenacker has still failed to state a claim under the UTPCPL, as she has not demonstrated that she "justifiably relied" on the alleged deceptions. Sturzenacker's Complaint contends that "Plaintiff has justifiably relied on the fraudulent representation of Defendant CMC's employees" and "Plaintiff justifiably relied on these representations." Compl. ¶¶ 66, 68. However, in order for a plaintiff to state a valid claim "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan*, 478 U.S. at 286). Sturzenacker's allegation that she "justifiably relied" on CMC's fraudulent representation is exactly the type of "formulaic recitation" the Court viewed inadequate in *Twombly*. Additionally, because those allegations are legal conclusions, the Court need not accept them as true. *See Iqbal*, 556 U.S. at 678.

---

[7] *See* Compl. ¶ 58.

Moreover, Sturzenacker primarily complains about conduct that occurred after she entered in to an agreement with CMC to make repairs. For example, she complains that her shutters were replaced with used shutters and the quality of the repairs was not what was agreed to. *See* Compl. ¶ 58. However, Sturzenacker could not have relied on this later conduct when entering into the work contract with CMC. *See Barker v. Hostetter*, No. 13-5081, 2014 U.S. dist. LEXIS 51688, at *89 (E.D. Pa. Apr. 15, 2014) ("To state a private cause of action under the UTPCPL, a plaintiff must allege that he has suffered 'an ascertainable loss *as a result* of the defendant's prohibited action,' which means the plaintiff must allege reliance on the defendant's conduct which induced the plaintiff to make a purchase for personal or household purposes." (quoting *Weinberg v. Sun Co., Inc.*, 777 A.2d 442, 446 (Pa. 2001))). Thus, Sturzenacker has failed to demonstrate any facts which, if true, would establish her "justifiable reliance." Sturzenacker's UTPCPL claim against CMC is dismissed without prejudice and with leave to amend. *See Grayson*, 293 F.3d at 111.

### C. This Court retains supplemental jurisdiction over the remaining counts against CMC.

CMC contends that if Counts II and IV are dismissed, this Court lacks jurisdiction over the remainder of the claims against CMC, Counts III, V, and VI, and they should be remanded to state court. However, 28 U.S.C. § 1367 provides that a district court may exercise supplemental jurisdiction when it has original jurisdiction over a claim and the remaining claims form the "same case or controversy." 28 U.S.C. § 1367(a). CMC argues that the remaining counts, all involving solely state law claims, stem from a different "case or controversy" than the federal FDCPA claim at Count I, which grants original jurisdiction. It is CMC's contention that the FDCPA claim deals with debt collection, while the remaining state law claims deal with whether a debt exists.

When dealing with the topic of debt collection, "there is a likelihood that many issues—such as the existence and nature of a debt . . . and when and how [a defendant] attempted to collect on any debt—will be relevant" in separate claims. *Kimmel v. Cavalry Portfolio Services, LLC*, 747 F. Supp. 2d 427, 435 (E.D. Pa. 2010). The court in *Kimmel* explained, "debt allegedly owed . . . and [d]efendant's attempt to collect on that debt" concern similar subject matter. *Id*. Due to the similarities, "considering both in the same action could help eliminate duplicative discovery." *Id*. Indeed, convenience (i.e. preventing duplicative discovery) is one of the considerations for a court when determining whether to exercise supplemental jurisdiction. *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966) (holding that courts should consider "judicial economy, convenience, and fairness to litigants" when deciding on supplemental jurisdiction).

Here, the existence of the alleged debt and the manner in which said debt was collected are issues that stem from a "common nucleus of operative fact" and form part of the same "case or controversy." However, since the time Defendants filed their Motion, C&B has defaulted on the sole federal claim, leaving only state law claims.[8] While 28 U.S.C. § 1367(a) allows this Court to exercise supplemental jurisdiction, section 1367(c) provides that the Court "may decline to exercise supplemental jurisdiction over a claim under section (a) if . . . the claim substantially predominates over the claim . . . over which the district court has original jurisdiction." 28 U.S.C §§ 1367(c)(1-4). Unlike in *Kimmel*, if this Court were to sever the two sets of claims, or sever Defendant C&B from this action, it would not run the risk of duplicative discovery, as default has been entered against the sole Defendant on the sole federal claim. The question is therefore whether this Court should exercise supplemental jurisdiction when the only active

---

[8] Only C&B was named as a defendant in the FDCPA claim at Count I.

claims before it are state law claims, which appear to substantially predominate in this action.

Accordingly, the parties shall submit briefing on the topic of whether this Court should exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over the remaining claims against CMC (Counts III, V, and VI). The briefs should particularly address 28 U.S.C. § 1367(c)(2) and its applicability to this case. To the extent that Counts II and IV are being dismissed without prejudice, the parties should also discuss how Sturzenacker's ability to plead a viable claim under the FCEUA and the UTPCPL might affect this determination.

## IV. CONCLUSION

Sturzenacker has failed to state a claim under the FCEUA and the UTPCPL against CMC and Kelley. Thus, Counts II and IV against CMC and Kelley, only, are dismissed without prejudice. Because Kelley was only a named Defendant in Count II, he is dismissed from this case without prejudice. This Court defers a decision on whether to exercise supplemental jurisdiction over the state law claims pending briefing from the parties regarding the applicability of 28 U.S.C. § 1367(c)(2). A separate order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge